IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| RAY D. WOLFE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Case No. 05-5033-CV-SW-RED |
| MISSOURI DEPARTMENT OF | ) |
| SOCIAL SERVICES, et el. | ) |
| | ) |
| Defendant. | ) |

## ORDER

Now pending before the Court is Plaintiff's Complaint (Doc. 1), Plaintiff's Motion to Discharge Child Support Order (Doc. 12), Defendants' Suggestions in Opposition to Motion to Discharge Administrative Child Support Order (Doc. 13), Defendants' Amended Motion for Summary Judgment and Suggestions in Support (Doc. 15), Plaintiff's Motion to Deny Defendants' Motion for Summary Judgment with Suggestions in Support (Doc. 20), and Defendants' Reply Suggestions in Support of Amended Motion for Summary Judgment (Doc. 21). Upon review, the Court finds that to the extent that Plaintiff seeks to vacate or discharge the state paternity determination and child support obligations such requests are due to be **DISMISSED** and that Defendants are due to be **GRANTED** summary judgment on all of Plaintiffs remaining claims.

### I. Factual and Procedural Background

On April 7, 1994, a child, J.M., was born to Melissa McElroy. On August 23, 1994, Plaintiff Ray D. Wolfe allegedly signed before a notary public an "Affidavit to Add Father's Name to the Birth Record of a Child Born in Missouri Out of Lawful Wedlock" (hereinafter "affidavit"). This affidavit was also signed by Melissa McElroy in the presence of a notary on

October 19, 1994. This is consistent with the procedure as set forth in Mo. Rev. Stat § 193.215.6. On February 18, 2000, Defendant Missouri Department of Social Services, Division of Child Support Enforcement (hereinafter "division") entered an Order based on the affidavit requiring Plaintiff to provide health insurance to J.M. This Order was filed in the Circuit Court of Greene County Missouri on February 23, 2000. On October 15, 2004, the Division, at the request of Ms. McElroy, filed a Motion for Modification of Child Support Order pursuant to Mo. Rev. Stat. § 454.500. This Motion proposed to modify the February 18, 2000, Order by requiring Plaintiff to pay child support in addition to health insurance. Plaintiff received notice of this Motion on October 20, 2004, and requested an administrative hearing to contest the Motion. On January 6, 2005, an administrative hearing was held in Jefferson City, Missouri, at 11:30 a.m. The hearing was presided over by Alice Shockley, an attorney employed by the Missouri Department of Social Services and an Administrative Hearing Officer. Plaintiff did not appear at 11:30, and efforts to contact the Plaintiff by phone failed. At 12:00 p.m., the hearing proceeded in default. Plaintiff alleges that following the hearing at approximately 12:10 p.m., he contacted Defendant Gina Brady (Child Support Enforcement Technician) and objected to the results of the hearing and stated that he would require a DNA test before making any child support payments. Following the hearing, a "Modification Decision and Order in Default" was entered on February 23, 2005, requiring Plaintiff to pay $164.00 a month in child support and maintain health insurance for J.M. This Order was then filed in the Circuit Court of Greene County, Missouri, on March 9, 2005.

Upon receiving a Copy of the February 23, 2005, Order, Plaintiff proceeded to file suit in this Court on March 21, 2005, against the "State of Missouri, Department of Social Services"

and Alice Shockley and Gina Brady in both their individual and official capacities. Plaintiff's Complaint states that he discovered in the summer of 1999 that J.M. was not his child and that Defendants violated his constitutional rights by entering the February 23, 2005, Order without subject matter jurisdiction and by refusing to grant Plaintiff's requests for DNA tests to establish that Plaintiff is the father of J.M. On December 19, 2005, Plaintiff filed a Motion to Discharge Administrative Child Support Order (Doc. 12) requesting the Court discharge the February 23, 2005, Order. On January 3, 2006, Defendants filed their Suggestions in Opposition to Plaintiff's Motion to Discharge Administrative Child Support Order (Doc. 13) and a Motion for Summary Judgment (Doc. 15).

## II. Analysis

Plaintiff's Complaint seeks relief in three counts. Count I alleges "Deprivation of Constitutional Rights and Privileges" pursuant to 42 U.S.C. § 1983. Count II is styled "Conspiracy to Depriving [sic] Persons of Equal Protection of the Laws" pursuant to 42 U.S.C. § 1985. Count III is a pendant state law claim for Intentional Infliction of Emotional Distress. Plaintiff argues that his Fourteenth Amendment Equal Protection Rights and his Fifth and Fourteenth Amendment due process rights were violated by the Modification Order entered on February 23, 2005. Count III of Plaintiff's Complaint also alleges a violation of his Seventh Amendment rights and Plaintiff's Response to Defendants' Motion to Dismiss claims violations of his Sixth Amendment rights. He seeks monetary damages of $100,000 and punitive damages of $150,000 on each Count of his Complaint.

Plaintiff has also filed a Motion to Discharge Administrative Child Support Order (Doc. 12). In this Motion, Plaintiff requests that the Court discharge the February 23, 2005, Order

-3-

Case 3:05-cv-05033-RED   Document 23   Filed 05/17/06   Page 3 of 13

requiring Plaintiff to pay child support in addition to medical insurance to J.M.

Defendant has moved for summary judgment on all three counts of Plaintiff's Complaint and filed an opposition to Plaintiff's Motion to Discharge Child Support Order. Defendants argue that this Court lacks jurisdiction to hear challenges concerning paternity and support enforcement; that Plaintiff has failed to exhaust his administrative remedies; that Defendants are entitled to Eleventh Amendment and qualified immunity; and that even if the Court were to reach the merits of Plaintiff's claims, that Plaintiff has never rescinded paternity of J.M. or contested the legal finding of paternity pursuant to Mo. Rev. Stat. § 210.826. In response, Plaintiff asserts that he never appeared before notary M. Sue Dean to sign the affidavit establishing paternity; that the affidavit is a "fraud"; that his constitutional rights were violated in that the "court" entering the February 23, 2005, Order did not have jurisdiction over Plaintiff; and that he could not have protested paternity previously as he never knew that his name had been added to the birth certificate of J.M. Plaintiff further requests that the Court enter an order for the State to confirm paternity through a DNA test.

*A. Plaintiff's Challenges to State Child Support and Paternity Findings*

Although Plaintiff has alleged constitutional violations in his Complaint along with claims for monetary damages it is clear that the threshold issue for any of Plaintiff's requested relief is to have the legal finding of paternity set aside and the state modification Order of February 23, 2005, annulled or vacated. *See* Plaintiff's Motion to Discharge Administrative Child Support Order (Doc.12); *see also* Plaintiff's Motion to Deny Defendant's Motion for Summary Judgement with Suggestions in Support (Doc. 20) (requesting the Court order the State of Missouri to confirm Plaintiff's paternity through a DNA test and stating that Plaintiff "may be

-4-

Case 3:05-cv-05033-RED   Document 23   Filed 05/17/06   Page 4 of 13

willing to dismiss part of this petition depending on the results of [the] test.")

While the Court understands Plaintiff's desire for review of the state proceedings, this Court is not the proper venue for Plaintiff to seek relief from state paternity and child support determinations. Although federal courts generally have a virtually unflagging obligation to exercise their jurisdiction in proper cases, *Beavers v. Arkansas State Bd. of Dental Examiners*, 151 F.3d 838, 840 (8th Cir. 1998), federal courts may abstain or decline from deciding an issue in order to preserve traditional principles of equity, comity and federalism. *Id. See also Atlantic Coast Line R.R. v. Bhd. of Locomotive Eng'rs,* 398 U.S. 281, 296 (1970) (federal district courts may not sit in review of state court decisions); *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432 (1982)(*Younger* abstention, 401 U.S. 37 (1971), applies where there is an ongoing state judicial proceeding which implicates important state interests and provides litigants an opportunity to raise constitutional challenges); *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995)(*Rooker-Feldman* doctrine precludes federal court from reviewing state court action if relief requested would effectively reverse state court decision or void its ruling.) Such discretion is particularly appropriate where the state has a strong interest and competence in dealing with the subject matter at issue, such as state criminal, administrative, and domestic relations matters. *See Ankenbrandt v. Richards*, 504 U.S. 689, 714-715 (1992).

Here, there is no question that Plaintiff's challenges to the state paternity and child support determinations are within the field of domestic relations, and that federal courts should defer to state decision making in such areas. *See Kahn v. Kahn,* 21 F.3d 859, 860-861 & n.1 (8th Cir.1994); *Overman v. U.S.,* 563 F.2d 1287, 1292 (8th Cir. 1977) ("There is, and ought to be, a

continuing federal policy to avoid handling domestic relations cases in federal court in the absence of important concerns of a constitutional dimension. Such cases touch state law and policy in a deep and sensitive manner and as a matter of policy and comity, these local problems should be decided in state courts.) (internal citations omitted). Accordingly, the Court finds that to the extent that Plaintiff seeks federal review of the state paternity and child support determinations in his Motion to Discharge Administrative Child Support Order (Doc.12), Complaint (Doc. 1) and other pleadings, such requests are inappropriate for federal review. Therefore, to the extent that Plaintiff challenges ongoing state child support or paternity proceedings, such claims are due to be **DISMISSED** under the *Younger* abstention doctrine. To the extent that Plaintiff seeks review of final state decisions, such claims are due to be **DISMISSED** under the *Rooker-Feldman* doctrine.

*b. Plaintiff's Claims for Monetary Damages*

In addition to the challenges Plaintiff raised to the state paternity and child support determinations, Plaintiff's Complaint also seeks monetary damages for violations of his Fifth and Fourteenth Amendment equal protection and due process rights under 42 U.S.C. §§ 1983 and 1985 as well as a pendant state law claim for intentional infliction of emotional distress. Such claims are brought against the "State of Missouri, Department of Social Services," and against department employees Alice Shockley and Gina Brady, in both their official and individual capacities. Defendants have moved for summary judgment on all three Counts of Plaintiff's Complaint. Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to judgment as a matter of law." *Fry v. Holmes Freight Lines, Inc.*, 72 F. Supp. 2d 1074 (W.D. Mo. 1999). When ruling on a motion for summary judgment, the court should view the facts in the light most favorable to the adverse party and allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. *See id.* (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144 (1970)); *Reed v. ULS Corp.,* 178 F.3d 988, 990 (8th Cir. 1999)).

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The evidence in favor of the nonmoving party must be more than "merely colorable." *Id.* When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986) (footnote omitted). Although the defendant seeking summary judgment "has the burden of showing that there is no genuine issue of [material] fact, [this does not relieve the plaintiff of his] own burden of producing in turn evidence that would support a jury verdict." *Liberty Lobby,* 477 U.S. at 256. If the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to his case, and on which he will bear the burden of proof at trial," the defendant is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

First of all it is questionable that any claims remain to be considered since any finding in favor of Plaintiff would likely require a reversal of the state proceedings reflected in the modification Order of February 23, 2005. However, even if the Court assumes that Plaintiff would be able to pursue his claims of violations of his constitutional rights, Defendants are still

-7-

entitled to Summary Judgment.

With respect to Plaintiff's claims against the "State of Missouri, Department of Social Services" and department employees Alice Shockley and Gina Brady in their official capacity, Plaintiff's suit is clearly barred by Eleventh Amendment State Sovereign Immunity. Generally, the Eleventh Amendment shields a state from suit in federal court unless the state consents to suit or waives its immunity. *Hans v. Louisiana*, 134 U.S. 1, 10 (1890). This includes suits brought against states by its own citizens or citizens of a different state. *Id.* Sovereign Immunity also extends to so-called "arms" of the state. *See Alden v. Maine*, 527 U.S. 706, 756 (1999). Whether an entity constitutes an "arm" of the state turns on its relationship to the state under state law. *Regents of the Univ. of California v. Doe*, 519 U.S. 425, 430-31 & n.5 (1997). "In determining whether a state agency or department shares the state's eleventh amendment shield, the key is who will pay for any [adverse judgment] . . . ." *Miener v. State of Missouri*, 673 F.2d 969, 980 (8th Cir. 1982) (citations omitted).

In this case, Plaintiff names the "State of Missouri, Department of Social Services" as a Defendant. Such a suit is clearly against the state and a state agency or arm of the state, each of which is entitled to the protections of Eleventh Amendment Immunity. *See Muza v. Dept. of Soc. Servs.*, No. 86-1194, 1986 WL 25247 at *2 (W.D. Mo. Nov. 19, 1986) (finding the Missouri Department of Social Services is entitled to Eleventh Amendment Immunity).

Additionally, the Supreme Court has held that a suit against a state official in his or her official capacity is not a suit against the official, but rather is a suit against the official's office, and as such is no different from a suit against the State itself. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) (internal citations omitted). Therefore, the protections of Eleventh

-8-

Amendment immunity also extend to protect Defendants Alice Shockely and Gina Brady from litigation in their official capacity as employees of the Missouri Department of Social Services.

The sole issue remaining before the Court then is whether Alice Shockely and Gina Brady are immune from suit in their individual capacities. The Eleventh Amendment does not bar compensatory or punitive damages against state officials sued in their individual capacities. *See Hafer v. Melo*, 502 U.S. 21, 30-31 (1991). However, public officials are entitled to qualified immunity in suits against them in their individual capacity as long as their actions do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Engle v. Townsley*, 49 F.3d 1321, 1322 (8th Cir. 1995). In considering the defense of qualified immunity, "[t]he sequence of [the Court's] analysis is to ask first whether, taken in the light most favorable to the plaintiff, the facts alleged show the officer's conduct violated a constitutional right; and second, whether, in the specific context of the case, the right was clearly established." *Swipies v. Kofka*, 348 F.3d 701, 703 (8th Cir. 2003).

Here, Plaintiff's Complaint alleges violations of his due process rights and equal protection rights under the First and Fourteenth Amendments. Count III of Plaintiff's Complaint also alleges a violation of his Seventh Amendment rights. In his response to Defendant's Motion for Summary Judgment, Plaintiff also alleges, for the first time, violations of his Sixth Amendment right to a criminal jury trial. In support of these claims, Plaintiff states in the facts section of his Complaint that the Defendants did not bother to find out whether J.M. was his child; that Defendant Brady refused to grant Plaintiff a paternity test; that the January 6, 2005, administrative hearing in Jefferson City was made without subject matter jurisdiction; and that

Defendants Shockley and Brady's "actions and omissions . . . caused Wolfe embarrassment, humiliation, emotional distress, grief and discord." Plaintiff further alleges in the Counts of his Complaint that Defendants deprived him of his property interest and "reputation as an honest Missouri citizen" without due process of law; that the Department of Social Services with Shockley conspired with Brady to deprive Plaintiff of his equal protection rights; and that Defendants conspired to defame Plaintiff without a legal Seventh Amendment common law hearing.

Viewing each of these allegations in the light most favorable to Plaintiff, each of Plaintiff's arguments must fail because Plaintiff has not shown that actions of Defendants Shockley and Brady violated his constitutional rights. Plaintiff's equal protection argument fails for the simple reason that Plaintiff has failed to make a threshold showing that he was treated less favorably than others who were similarly situated to him. *See Klinger v. Department of Corrections*, 31 F.3d 727, 731 (8th Cir. 1994). Construing Plaintiff's assertion that Defendants deprived Plaintiff of his Seventh Amendment rights to a common law hearing as a deprivation of Plaintiff's right to a trial by jury, U.S. Const. amend VII, Plaintiff's argument must fail because the Seventh Amendment's right to trial by jury in the federal courts has not been extended to the states through the Fourteenth Amendment. *Letendre v. Fugate*, 701 F.2d 1093, 1094 (4th Cir. 1983). Thus, a denial of a jury trial in a state proceeding does not violate the due process or equal protection clauses of the Constitution. *See id.* Furthermore, the provisions of the Sixth Amendment are "explicitly confined to 'criminal prosecutions,'" and are inappliable to civil proceedings such as the child support hearing Plaintiff is protesting. *Austin v. United States*, 509 U.S. 602, 608 (1993). Finally, the protections of procedural due process generally mandate that

-10-

a Plaintiff receive proper notice and an opportunity to be heard prior to being deprived of a property interest. *See Parrat v. Talyor*, 451 U.S. 527, 541 (1981). With respect to the child support modification order, the record indicates that Plaintiff received notice of the Motion for Modification of Child Support Order. Upon receipt of the notice, he requested and received an administrative hearing. Notice of the date of the hearing was mailed to Plaintiff and Plaintiff has not argued that he failed to receive notice of the hearing. Plaintiff then failed to appear at the hearing on the scheduled date. Efforts were made at the hearing to contact the Plaintiff by phone, and when those attempts failed the hearing proceeded in default without Plaintiff. Plaintiff admits that he contacted Defendant Brady at 12:10 p.m. and objected to the results of the hearing. The Court finds that notice of the hearing and the hearing itself were more than sufficient to satisfy Plaintiff's due process rights with respect to the child support Order of February 23, 2005. As to the challenged paternity determination, Plaintiff, even after allegedly discovering that he was responsible for providing medical insurance and child support payments for J.M., has again failed to avail himself of all the due process remedies afforded him in state court. For instance, Defendant has never properly contested the paternity of J.M. in a state circuit court under Mo. Rev. Stat. § 454.400 or challanged the Affidavit to Add Father's Name to the Birth Record of a Child Born in Missouri Out of Lawful Wedlock as fraudulent pursuant to Mo Rev. Stat. § 210.823.1.

Moreover, Defendants Brady and Shockley acted lawfully during the time period at issue in this case.[1] In support of their motion for summary judgment, Defendants have provided the

---

[1] Indeed, to the extent that Defendants Brady and Shockley initiated or oversaw a judicial or quasi-judicial proceeding, they would appear to be protected by absolute immunity. *See Butz v. Economou,* 438 U.S. 478, 513-14 (1978); *see also Thomason v. SCAN Volunteer Servs., Inc.,*

court with copies of the Affidavit to Add Father's Name to the Birth Record of a Child Born in Missouri Out of Lawful Wedlock; the February 23, 2000, Order requiring Plaintiff to Provide Medical Insurance to J.M.; the Motion for Modification of Child Support Order; and the Modification Decision and Order in Default dated February 23, 2005. The Court has reviewed these documents and finds that Defendants at all times acted within the scope of authority provided to them under Missouri law. Since state statutes are presumed constitutional, *Fitz v. Dolyak*, 712 F.2d 330, 333 (8th Cir. 1983), Plaintiff was required to show that Defendants acted in contravention of said statutes or in violation of his constitutional rights to overcome Defendants Brady's and Shockley's claim of qualified immunity. This Plaintiff has not done. Plaintiff has failed to come forward with any evidence rebutting the documents provided by the Defendants other than his unsupported assertion that the affidavit is a fraud. He does not allege that the individual Defendants forged his name on the affidavit. In fact, it does not appear that they were even involved with Plaintiff until several years after the affidavit was allegedly signed. There simply is no conduct alleged of the individual Defendants that even remotely appears to be outside the scope of their official duties. Since mere arguments or allegations are insufficient to defeat a properly supported motion for summary judgment, *Burford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984), Plaintiff has failed to make a showing sufficient to establish the existence of an element essential to his case, and on which he will bear the burden of proof at trial. *Celotex*

---

85 F.3d 1365, 1373 (8th Cir. 1996) ("To the extent [a state authorized child welfare agency and its worker] are sued for initiating judicial proceedings, [the worker's] role was functionally comparable to that of a prosecutor"). However, because Defendants did not raise the issue of absolute immunity as a defense and because the Court finds that Defendants are still protected by qualified immunity, the Court need not reach this question.

-12-

Case 3:05-cv-05033-RED   Document 23   Filed 05/17/06   Page 12 of 13

*Corp.*, 477 U.S. at 322. *See also* Fed. R. Civ. P. 56(e). Accordingly, since Plaintiff has failed to overcome Defendants Brady's and Shockely's defense of qualified immunity for actions undertaken in their individual capacity, said Defendants are entitled to summary judgment on this point.

### IV. Conclusion

For all the reasons set forth herein, it is hereby

ORDERED that to the extent that seeks to challenge the state paternity and child support determinations in his Motion to Discharge Child Support Order (Doc. 12) and other pleadings, Plaintiff's claims are **DISMISSED** pursuant to the *Younger* abstention and *Rooker-Feldman* doctrines.

ORDERED that Defendants' Amended Motion for Summary Judgment (Doc. 15) is **GRANTED.** Judgment shall be entered in favor of Defendants on all counts of Plaintiff's Complaint.

ORDERED that the pretrial telephone conference set for Thursday, May 18, 2006, and the trial setting of Tuesday, May 30, 2006, are hereby **VACATED.**

**IT IS SO ORDERED.**

                                          */s/ Richard E. Dorr*
                                       RICHARD E. DORR, JUDGE
                                       UNITED STATES DISTRICT COURT

DATED: May 17, 2006